1  JAMES McMANIS (40958)
   MICHAEL REEDY (161002)
2  TYLER ATKINSON (257997)
   NEDA SHAKOORI (283823)
3  McMANIS FAULKNER
   A Professional Corporation
4  50 West San Fernando Street, 10th Floor
   San Jose, California 95113
5  Telephone:    408-279-8700
   Facsimile:    408-279-3244
6  Email:        mreedy@mcmanislaw.com

7  Attorneys for Plaintiff, Dr. Haiping Su

8

9
                   UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN JOSE DIVISION
12

13

14                                    No. C09-2838 EJD (JSC)

15  HAIPING SU,
                                      **MEMORANDUM OF POINTS AND**
16        Plaintiff,                  **AUTHORITIES IN SUPPORT OF**
                                      **MOTION FOR FEES AND EXPENSES**
17  v.                                **IN PROVING MATTERS THAT**
                                      **SHOULD HAVE BEEN ADMITTED**
18  UNITED STATES OF AMERICA,         **(Fed. R. Civ. P. 37(c)(2))**

19        Defendant.
                                      Date:     March 12, 2015
20                                    Time:     9:00 a.m.
                                      Ctrm:     4
21                                    Judge:    The Hon. Edward J. Davila

22

23

24

25

26

27

28
                                      1

1

## TABLE OF CONTENTS

2

**INTRODUCTION** .................................................................................................1

**STATEMENT OF FACTS** ....................................................................................2

**LEGAL ARGUMENT** ..........................................................................................7

**I.**     **FRCP RULE 37(C)(2) AUTHORIZES A MOTION FOR FEES AND EXPENSES TO BE FILED AFTER TRIAL** ............................................7

**II.**    **AN AWARD OF EXPENSES AND FEES IS MANDATORY** ..................7

**III.**   **NO EXCEPTION APPLIES IN THIS CASE** ...........................................8

    **A.**   **The Subject Requests Were Not "Held Objectionable** ..............8

    **B.**   **The Admissions Sought Were of "Substantial Importance."** ...............8

    **C.**   **The Government Lacked Reasonable Ground to Believe It Might Prevail on The Non-Admitted Matters** ........................................9

    **D.**   **There Was No "Other Good Reason" For Defendant's Failure to Admit** .................................................................................................9

**IV.**   **PLAINTIFF'S FEES AND COSTS** ..........................................................10

    **A.**   **The Hours Claimed Were Reasonably Expended by Each Timekeeper** ......................................................................................10

    **B.**   **The Requested Hourly Rates Are Reasonable** ......................................11

**CONCLUSION** .....................................................................................................12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF AUTHORITIES**

3

## **CASES**

4

*Apex Oil Co. v. Belcher Co. of N.Y.,*
5
    855 F.2d 1009 (2nd Cir. 1988)....................................................................................... 9

*Central Kan. Credit Union v. Mutual Guar. Corp.,*
6
    1995 U.S. Dist. Lexis 19717, *4 (D. Kan. 1995)......................................................... 7

7
*Children's Hospital & Medical Center v. Bontá,*
    97 Cal.App.4th 740 (2002) ......................................................................................... 11
8

*Graham v. DaimlerChrysler Corp.,*
9
    34 Cal.4th 553 (2004) ................................................................................................. 11

10
*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)............................................................................................. 10, 11
11

*Ketchum v. Moses,*
12
    24 Cal.4th 1122 (2001) ............................................................................................... 11

13
*Marchand v. Mercy Medical Ctr.,*
    22 F.3d 933, 936 (9th Cir. 1994)........................................................................... 7, 8, 9
14

*PLCM Group, Inc. v. Drexler,*
15
    22 Cal.4th 1084 (2000) ............................................................................................... 11

16
*Russel v. Foglio,*
    160 Cal.App.4th 653 (2008) ...................................................................................... 11
17

*SEC v. Happ,*
18
    392 F.3d 12 (1st Cir. 2004)........................................................................................... 9

19
*Serrano v. Unruh (Serrano IV),*
    32 Cal.3d 621 (1982) .................................................................................................. 11
20

*Stuart v. RadioShack Corp.,*
21
    2010 US Dist. Lexis 92067 *18 (N.D. Cal. 2010) .................................................... 12

22
*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989).................................................................................................... 10
23

*Utility Reform Network v. PUC,*
24
    166 Cal.App.4th 522 (2008) ...................................................................................... 12

25

## **OTHER AUTHORITIES**

26
Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2012) § 9.113 ...................................... 11
27

*Moore's Federal Practice* § 37.74[1] (Matthew Bender, 3d ed.) ............................... 7, 8
28

**RULES**

Fed. R. Civ. Proc., Rule 1 ........................................................................................................ 7

Fed. Rule Civ. Proc., Rule 37(c) ........................................................................................... 8, 9

Fed. R. Civ. Proc., Rule 37(c)(2) ....................................................................................... 7, 8, 9

iii

MPA ISO MOTION FOR FEES AND EXPENSES IN PROVING MATTERS THAT SHOULD HAVE BEEN ADMITTED;
CASE NO.: No. C09-2838 EJD (JSC)

1

## INTRODUCTION

2        Plaintiff, Dr. Haiping Su, moves this Court for an order requiring defendant to pay the

3    sum of $1,314,545.11, which represents the reasonable expenses, including attorney's fees,

4    incurred by plaintiff in proving that:

5    - NASA security provided adverse, unfavorable, and derogatory information to non-federal

6        employees, namely, plaintiff's UC Santa Cruz friends and co-workers.  (See RFA 8 and

7        Docket 266, ¶¶ 45, 50-52.)

8    - NASA security's statement implying plaintiff allegedly accepted or received money from

9        a foreign government and denied accepting or receiving such money contained personal

10       information of an extremely private nature.  (See RFA 16 and Docket 266, ¶¶ 50, 52, 68.)

11   - The statement that plaintiff accepted money from a foreign government, and lied about it,

12       was particularly unnecessary in light of other disclosures.  NASA security disclosed to

13       UC Santa Cruz employees, and individuals within NASA's Earth Sciences Division, that

14       Su was considered a "security risk," which is personal information of an extremely

15       private nature.  (See RFA 9-10, 17 and Docket 266, ¶ 50, 67.)  NASA security also

16       disclosed plaintiff's alleged performance on a polygraph test to his superiors.  (See RFA

17       27 and Docket 266, ¶ 32.)

18       The United States of America and its agency, the National Aeronautics and Space

19   Administration ("NASA"), were served with Requests for Admission requesting that the USA

20   and NASA admit that NASA security provided adverse, unfavorable, and derogatory information

21   about plaintiff to non-federal employees (RFA 8); NASA disclosed to UCSC employees and

22   ESD personnel that Su was considered a "security risk" (RFA 9-10); the statement that plaintiff

23   was a security risk was extremely private in nature (RFA 17); the statement that plaintiff

24   accepted or received money from a foreign government and then denied it was extremely private

25   in nature (RFA 16); and NASA disclosed to plaintiff's superiors that he allegedly failed a

26   question on his polygraph test (RFA 27).  Defendants unreasonably refused to admit these

27   requests.

28       Plaintiff proved these facts at trial, and Rule 37(c)(2) of the Federal Rules of Civil

1

Procedure requires the Court to award plaintiff the expenses and fees incurred in proving this fact.

## STATEMENT OF FACTS

Plaintiff requests the Court take judicial notice of the following facts pursuant to Federal Rule of Evidence 201:

1.      The National Aeronautics and Space Administration ("NASA") is a government agency of the United States of America.

2.      Defendants NASA and the United States of America were represented in this matter by the Department of Justice, Civil Division.

3.      At the trial of this case, the Court found that:

- On July 3, 2008, NASA Security Chief Robert Dolci convened a meeting that included Su's UARC coworkers and NASA colleagues in the Earth Sciences Division. (Docket 266, ¶ 45.)

- At this meeting, "Dolci informed the attendees that Su was debarred because he was a security risk."  (Docket 266, ¶ 50.)

- "Dolci also said that Su's debarment was the result of something he did in a prior job."  (Docket 266, ¶ 51.)

- "Dolci told the assembled staff that one way to avoid Su's fate was not to take money from a foreign government and then deny it."  (Docket 266, ¶ 52.)

- "After the July 3 meeting, it was generally understood among the UARC staff that Su was debarred because he had received money from a foreign government and concealed it."  (Docket 266, ¶ 52.)

- "[T]he statement [regarding taking money and denying it] was intended to suggest, and did suggest, that [plaintiff] had taken money from a foreign government."  (Docket 266, ¶ 52.)

- "[A]s described at trial, the statement was delivered rather flippantly. Dolci already had informed the Earth Sciences Division in general terms why [plaintiff] had been

1   debarred and allayed their concerns that the debarment might have arisen from work

2   they themselves were still performing."  (Docket 266, ¶ 69.)

3       4.   At the trial of this case, the Court found that Dolci informed the Earth Sciences

4   Division in general terms why plaintiff had been debarred and allayed their concerns that the

5   debarment might have arisen from work they themselves were still performing.  Specifically:

6   • Dolci told plaintiff's coworker Larry Hogle prior to the debarment, and coworker

7   Bruce Coffland after the debarment, that plaintiff had a problem with one

8   particular polygraph question.  (Docket 266, ¶ 32.)

9   • "Dolci informed the attendees [of the July 3, 2008, presentation] that Su was

10   debarred because he was a security risk."  (Docket 266, ¶ 50.)

11   • "Dolci also said that [plaintiff's] debarment was the result of something he did in

12   a prior job."  (Docket 266, ¶ 51.)

13       5.   The Court further found that:

14   • "Su had a legally protectable interest in the investigatory determination that he

15   was a security risk." (Docket 266, ¶ 67.)

16   • "Su had a reasonable expectation that the security risk determination resulting

17   from the joint FBI/NASA investigation would not be broadcast widely." (Docket

18   266, ¶ 67.)

19   • "[Su] had no reason to expect that [security risk] determination to be announced

20   at a large staff meeting containing as many as fifty of his colleagues."  (Docket

21   266, ¶ 67.)

22   • "Dolci's announcement [that Su was a security risk] constituted a serious invasion

23   of Su's privacy. (Docket 266, ¶ 67.)

24   • "Su had a legally protectable interest in the investigatory determination that he

25   had done something during his prior employment to render him a security risk."

26   (Docket 266, ¶ 68.)

27

28

- "Su had a reasonable expectation that the investigatory findings would not be widely publicized, and Dolci's statement at the July 3 meeting constituted a serious invasion of his privacy rights." (Docket 266, ¶ 68.)
- "Dolci's disclosure of that investigatory finding [that plaintiff had taken money from a foreign government] constituted a serious violation of Su's privacy rights." (Docket 266, ¶ 69.)
- The allegation that plaintiff took money from a foreign government and denied it "is not covered by the common interest or competing interest privilege."  (Docket 266, ¶ 69.)
- The allegation plaintiff took money from a foreng government and denied it "was not a statement that would 'preserve employee morale and job efficiency.' [citation]" (Docket 266, ¶ 69.)
-  "There was no legitimate purpose served by revealing that Su had taken, or at least was suspected of taking, money from a foreign government."  (Docket 266, ¶ 69.)

The Supporting Declaration of Tyler Atkinson establishes that:

6.      Plaintiff served a request for admission on NASA that read:

**REQUEST FOR ADMISSION NUMBER 8:** Admit that NASA provided adverse information about Dr. Haiping Su to individuals not employed by the federal government. "Adverse information" shall mean adverse information as it is used in NASA Procedural Requirements 1600, section 4.11, and includes adverse, unfavorable, or derogatory information.

7.      On March 24, 2010, NASA answered request for admission number 8 by stating:

**RESPONSE**: Denied.

8.      Plaintiff served a request for admission on the USA and NASA that read:

**REQUEST FOR ADMISSION NO. 9:** Admit that NASA employees or personnel, including but not limited to Robert Dolci, Kenneth Silverman, Reginald Waddell, and/or Steve Hipskind, disclosed to employees of the University of California at Santa Cruz who were were [sic] working at the NASA Ames facility under the University Affiliated Research Center (hereafter, "UARC") contract with NASA (referenced in paragraph 39 of Defendants' Answer filed July 26, 2010), that Dr. Haiping Su was or is considered to be a security risk.

9.      On March 22, 2011, NASA answered request for admission number 9 by stating:

4

**RESPONSE**: Defendants object to this Request as compound, and to the terms "personnel," and "disclosed" as vague. Defendants further object to the Request as calling for a legal conclusion. Subject to notwithstanding defendants' objections, including the General Objections, deny except to admit that on or about the morning of June 24, 2008, Robert Dolci advised Larry Hogle, at the time a University of California at Santa Cruz employee working as the associate director of the UARC contract, that later that day, Dr. Su would be issued a debarment letter, and would be removed from the installation, because it was NASA's belief that Su "represented a security risk." Dolci Dep. 174:14-19; 176:19-177:2. Admit that later that day, Kenneth Silverman, the Center Chief of Security at NASA Ames, hand-delivered a copy of the letter, which stated that Dr. Su was no longer permitted access to NASA Ames "based upon a determination that your continued presence on NASA property constitutes a security risk" to Mr. Hogle and to Dr. Su. Silverman Dep. 97:4-12; 119:8-9. Mr. Silverman "perhaps mailed a copy of the letter" to William Berry, who at the time was the Executive Director of the UARC contract. Id. at 96:16-21.

10.     Plaintiff served a request for admission on the USA and NASA that read:

**REQUEST FOR ADMISSION NO. 10:** Admit that NASA employees or personnel, including but not limited to Robert Dolci, Kenneth Silverman, Reginald Waddell, and/or Steve Hipskind, disclosed to employees of NASA's Earth Sciences Division located at NASA Ames, and/or to other persons or contract employees who were working with members of NASA's Earth Sciences Division located at NASA Ames (other than or in addition to University of California at Santa Cruz employees working at the NASA Ames facility under the UARC contract), that Dr. Haiping Su was or is considered to be a security risk.

11.     On March 22, 2011, NASA answered request for admission number 10 by stating:

**RESPONSE:** Defendants object to this Request as compound, and further object to the terms "personnel," "working with," "disclosed," and "working with members of NASA's Earth Sciences Division located at NASA Ames" as vague. Defendants further object to this Request as calling for a legal conclusion, and as irrelevant to the claims in this case. Subject to and notwithstanding defendants' objections, including the General Objections, deny.

12.     Plaintiff served a request for admission on the USA and NASA that read:

**REQUEST FOR ADMISSION NO. 16:** Admit that a statement implying that Dr. Haiping Su allegedly accepted or received money from a foreign government and denied accepting or receiving such money contains personal information of an extremely private nature.

13.     On March 22, 2011, NASA answered request for admission number 16 by stating:

**RESPONSE:** Defendants object to this Request as compound, and as calling for a legal conclusion. Defendants further object to this Request insofar as it assumes that NASA or any of its employees made a statement implying that Dr. Haiping Su allegedly accepted

or received money from a foreign government and denied accepting or receiving such money. Deny that any such statement was made. Defendants further object to the request as hypothetical, to the extent it asks whether any statement "implying that Dr. Haiping Su allegedly accepted or received money from a foreign government and denied accepting or receiving such money" may contain personal information of an extremely private nature. Subject to and notwithstanding defendants' objections, including the General Objections, deny.

14.     Plaintiff served a request for admission on the USA and NASA that read:

**REQEUST FOR ADMISSION NO. 17:** Admit that a statement characterizing Dr. Haiping Su as a security risk contains personal information of an extremely private nature.

15.     On March 22, 2011, NASA answered request for admission number 17 by stating:

**RESPONSE:** Defendants object to the term "characterizing" as vague. Defendants further object to the request as calling for a legal conclusion.  Defendants further object to the Request insofar as it assumes that NASA or any of its employees made a statement characterizing Dr. Su as a security risk.  Defendants further object to the request as hypothetical, to the extent it asks whether any statement that somehow characterizes Dr. Su as a security risk must contain personal information of an extremely private nature. Subject to and notwithstanding defendants' objections, including the General Objections, deny.

16.     Plaintiff served a request for admission on the USA and NASA that read:

**REQUEST FOR ADMISSION NO. 27:** Admit that Robert Dolci advised employees and staff working for the University of California at Santa Cruz of the UARC contract, including but not limited to Larry Hogle, Jeff Myers, and/or Bruce Coffland, that Dr. Su had trouble answering one question on the polygraph examination, which took place on or about March 21, 2008 (according to the FBI letter dated May 22, 2008; see AR 0084-0086).

17.     On March 22, 2011, NASA answered request for admission number 27 by stating:

**RESPONSE:** Defendants object to this Request as compound, and to the term "staff" as vague. Subject to and notwithstanding defendants' objections, including the General Objections, deny. Dolci Dep. 150:4-14.

18.     The total number of attorney hours devoted to proving these facts before and at trial, following defendant's denial, is shown by the printout attached as Exhibit E to the Supporting Declaration of Tyler Atkinson and amounts to 2874.7 hours of work.  Counsel's regular hourly fee and a reasonable hourly fee for these services ranged between $300 and $750 per hour, commensurate with the attorneys respective experience, for a total amount of attorney's

1  fees of $1,227,228.00.  In addition, plaintiff has reasonably incurred $87,317.11 in costs in

2  proving the above referenced facts before and at trial.

3  **LEGAL ARGUMENT**

4
5  **I.   FRCP RULE 37(C)(2) AUTHORIZES A MOTION FOR FEES AND EXPENSES
       TO BE FILED AFTER TRIAL.**

6          A Rule 37(c)(2) motion is a motion brought after facts have been adjudicated. "If a party

7  fails to admit what is requested under Rule 36 and if the requesting party later proves a document

8  to be genuine or the matter true, the requesting party may move that the party who failed to

9  admit pay the reasonable expenses, including attorney's fees, incurred in making that proof."[1]

10  **II.  AN AWARD OF EXPENSES AND FEES IS MANDATORY.**

11          Rule 37(c)(2) provides that a court "must" award the party its expenses and fees.  FRCP

12  Rule 37(c)(2); see *Moore's Federal Practice* § 37.74[1] (Matthew Bender, 3d ed.) (fee award is

13  mandatory in nature).  As observed by the Ninth Circuit:

14          The Rule mandates an award of expenses unless an exception applies.
         Enforcement encourages attorneys and parties to identify undisputed issues early
15        to avoid unnecessary costs.  Failure to identify those issues wastes the resources
         of parties and courts.
16
17          The Federal Rules are intended "to secure the just, speedy, and inexpensive
         determination of every action."  Fed. R. Civ. P. 1.  Parties may not view requests
18        for admission as a mere procedural exercise requiring minimally acceptable
         conduct.  They should focus on the goal of the Rules, full and efficient discovery,
19        not evasion and word play.

20  *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994); see *Central Kan. Credit*

21  *Union v. Mutual Guar. Corp.*, 1995 U.S. Dist. Lexis 19717, *4 (D. Kan. 1995) (citing *Marchand*

22  and explaining: "In short, unless an exception applies, the court must award the requesting party

23  its reasonable expenses later incurred in proving the truth of a matter which the other party failed

24  to admit.").

25

26  ────────────────────
[1] Defendant has filed a brief suggesting that a Rule 37(c)(2) sanctions motion was previously
27  adjudicated.  This is not possible.  Defendant bases its position on a statement contained in a
   Joint Final *Pretrial* Conference Statement.  Under this Court's Standing Order, parties are
28  supposed to include information about "anticipated motions."  Plaintiff could not have filed a
   Rule 37(c)(2) motion before receiving the court's factual findings on September 25, 2014.

7

## III. NO EXCEPTION APPLIES IN THIS CASE.

A court may refuse to award the expenses and fees involved in denying the matter only if it finds one of four exceptions applicable, none of which relate to the present matter.

### A. The Subject Requests Were Not "Held Objectionable."

Expenses are not awarded where the subject request "was held objectionable under Rule 36(a)." However, this exception does not apply in the present matter because the Government's responses contain only pro forma objections, there was no pre-trial motion on the sufficiency of any such objection, and the Court did not make a pre-trial ruling upholding any such objection. See *Moore's Federal Practice* § 37.74[2], citing Fed. Rule Civ. Proc., Rule 37(c), advisory committee note of 1970.

### B. The Admissions Sought Were of "Substantial Importance."

While expenses and fees may be denied if an admission sought "was of no substantial importance," here, the admissions sought dealt with central issues in the action. The Government denied that any adverse information had been provided to plaintiff's non-federal coworkers. The government further denied that the accusation regarding money from a foreign government would have been an invasion of his privacy. See *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 937, fn. 4 (9th Cir. 1994) (requests for admission regarding questions of mixed law and fact are recoverable under Section 37(c)(2)).

In issuing its ruling, the Court expressly found (1) NASA security told plaintiff's UC Santa Cruz co-workers that he took money from a foreign government and denied it; (2) this allegation was a serious invasion of plaintiff's privacy; and (3) the statement was particularly unnecessary because other disclosures had been made about plaintiff, including his alleged performance on his polygraph and his alleged status as a "security risk." The Court ruled in favor of plaintiff for these reasons.

The Court also found that Dolci told Su's UARC co-workers and his colleagues in the Earth Sciences Division that (4) Su was debarred because he was a security risk; and (5) that Su's debarment was the result of something he did in a prior job.

Su had a legally protectable interest in these investigatory determinations and a

1   reasonable expectation they would not be disclosed.  Disclosing the details of these investigatory

2   determinations to Su's co-workers constituted a serious invasion of Su's privacy.  Thus, although

3   these facts were denied by defendant, they were of substantial importance to this case.

4

5   **C. <u>The Government Lacked Reasonable Ground to Believe It Might Prevail on
    The Non-Admitted Matters.</u>**

6   A third exception to recovery of fees and expenses concerns whether the Government had

7   a reasonable ground to believe it might prevail on the contested matters.

8   Here, the Government did not have reasonable ground to believe it might prevail on the

9   matters that were the subject of the requests for admission.  The evidence was clear that the

10  subject statements were in fact made by defendant.  *See, e.g*., Findings of Fact and Conclusions

11  of Law, Docket 266, ¶ 50 (relying on the testimony of several witnesses); see also, e.g.,

12  *Marchand v. Mercy Med. Ctr.* 22 F.3d 933, 938 (9th Cir. 1994) (not reasonable to deny liability

13  for paralysis caused by removing cervical collar when there was no evidentiary support for

14  contrary proposition); *SEC v. Happ*, 392 F.3d 12, 33-35 (1st Cir. 2004) (even where testimony

15  and underlying document were somewhat ambiguous, district court did not abuse its discretion in

16  determining that the government should have stipulated to fact requested by defendant earlier in

17  action and awarding sanctions under rule 37(c)(2)).

18  Because the Government had no reasonable ground to believe it might prevail on the

19  contested matters, it should be responsible for expenses pursuant to Rule 37(c)(2).

20  **D. <u>There Was No "Other Good Reason" For Defendant's Failures to Admit</u>.**

21  The fourth and final exception to a recovery concerns whether the defendant had "other

22  good reason for the failure to admit."  There was no good reason to deny the requested

23  admissions.  The RFAs concerned objective matters not subject to reasonable dispute.  Even if

24  the Government at this late hour were to dispute the meanings of the requests at issue, its denials

25  "assume[d] that [the use of particular terms] are factually meaningful."  *Apex Oil Co. v. Belcher*

26  *Co. of N.Y.* 855 F.2d 1009, 1019 (2nd Cir. 1988).

27  Furthermore, as previously observed by the Court, if the Government in fact accused

28  plaintiff of taking money from a foreign government and lying about it, the Government's

9

defenses were untenable.  When the Government previously argued that plaintiff had no privacy

interest in the subject matter, the Court sharply disagreed, noting:

> The Court is at a loss to understand how [plaintiff] would not have a legally
> protected privacy interest in an investigative determination by United States
> agencies that he is a security risk.  *Cf. United States Dep't of Justice v. Reporters
> Comm. for Freedom of the Press*, 489 U.S. 749, 780 (1989). ("a third party's
> request for law enforcement records or information about a private citizen can
> reasonably be expected to invade that citizen's privacy"). Su's privacy interest
> appears particularly strong given his Chinese heritage and Dolci's implication that
> Su took money from a foreign government.

April 17, 2013, Order Granting In Part And Denying In Part Defendants' Motion For Summary

Judgment ("MSJ Order"), p. 17.

The Court further rejected the Government's contention that a statement that someone

took money from a foreign government and lied about it might be within the "bounds of a

normal employment-related communication."  MSJ Order, pp. 18-19.

Because the Government unjustifiably failed to admit matters of substantial importance

to this case, and these matters were later proven at trial, the Government must pay plaintiff's fees

and expenses.

## IV.  PLAINTIFF'S FEES AND COSTS.

Rule 37(c)(2) mandates an award of a reasonable fee for a time needed to prove matters

not admitted.  Under *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the starting point for

determining the

amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable rate.

### A.  <u>The Hours Claimed Were Reasonably Expended by Each Timekeeper.</u>

All fees requested in this motion are appropriate because of the scope and complexity of

the litigation and because the requested fees are limited to those necessary to prove the disputed

matters.  The Government undertook a robust defense, requiring plaintiff's counsel to devote

considerable time over several years to meet and confer over discovery, and engage in motion

1  practice.  *Serrano v. Unruh (Serrano IV),* 32 Cal.3d 621, 634, fn. 18 (1982) (opposing party's

2  tactics are probative of whether time was reasonably spent).  In light of the complexity of the

3  issues, the five-year period in which this case was litigated, the extensive motion practice, the

4  Government's refusal to compromise, and the trial, the time devoted by plaintiff's counsel was

5  reasonably expended to succeed in his lawsuit.

6        The reasonableness of the fees is also supported by the billing judgment of plaintiff's

7  counsel.  Litigation counsel are expected to exercise their own "billing judgment" in their fee

8  claim.  *Hensley v. Eckerhart,* 461 U.S. 424, 431 (1983).  While time spent litigating this case

9  may have been significant, the complexity of the issues and strong defense presented by the

10  Government, were no less significant.  Considering the subject matter and time necessarily spent,

11  the request, particularly after counsel's billing judgment, is fair.

12        **B.   The Requested Hourly Rates Are Reasonable.**

13        The lodestar determination requires the trial court to determine the reasonable hourly rate

14  of each attorney claiming fees.  *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 579 (2004).

15  The reasonable market value of the attorney's services is the measure of a reasonable hourly rate.

16  *Ketchum v. Moses,* 24 Cal.4th 1122, 1132 (2001).  Current rates may be used, and most

17  California awards are based on current rates.  *Graham*, *supra*, 34 Cal.4th at 584; Cal. Attorney

18  Fee Awards (Cont.Ed.Bar 3d ed. 2012) § 9.113, p. 543.

19        To determine reasonable market value, courts must determine whether the requested rates

20  are "within the range of reasonable rates charged by and judicially awarded comparable

21  attorneys for comparable work."  *Children's Hospital & Medical Center v. Bontá*, 97

22  Cal.App.4th 740, 783 (2002).  Courts consider a number of factors in evaluating whether a rate is

23  reasonable, including: the nature of the litigation, the attorneys' reputation, the difficulty of the

24  case, the skill required in its handling, the skill employed, the attention given, and the success or

25  failure of the action.  *See*, *e.g.*, *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000).

26        Courts have considered counsel's special expertise, background, or skill level as

27  justifying a higher rate than the community average.  *See*, *e.g.*, *Russel v. Foglio*, 160 Cal.App.4th

28  653, 661 (2008) (noting counsel's particular trial experience); *Utility Reform Network v. PUC,*

1   166 Cal.App.4th 522, 537 (2008).  The attorneys at McManis Faulkner who worked on this case

2   are distinguished lawyers.  The quality of the papers and legal research is also probative of the

3   reasonableness of fees.  Plaintiff's counsel regularly submitted accurate and thorough legal

4   briefing to the Court.

5          Finally, the mean average hourly rate requested is only $475, well within the community

6   standard.  *See*, *e.g.*, *Stuart v. RadioShack Corp.,* 2010 US Dist. Lexis 92067 *18 (N.D. Cal.

7   2010)(awarding $708 average rate in wage and hour class action).  Because the rates are

8   reasonable and the billed time was reasonably spent, plaintiff should recover all fees and costs.

9                                  **CONCLUSION**

10          For the foregoing reasons, plaintiff should be awarded his fees and expenses incurred in

11  proving the matters asserted by plaintiff's Requests for Admission numbered 8, 9, 10, 16, 17, and

12  27.

13                                          Respectfully submitted,

14

15  DATED:  October 9, 2014                 McMANIS FAULKNER

16

17                                           /s/ Tyler Atkinson
                                            TYLER ATKINSON

18                                          Attorneys for Plaintiff,
19                                          DR. HAIPING SU

20

21

22

23

24

25

26

27

28

---

12