UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HAIPING SU,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, et al.,<br><br>    Defendants. | Case No. 5:09-cv-02838-EJD<br><br>**ORDER RE: MOTIONS REGARDING FEES AND COSTS**<br><br>Re: Dkt. Nos. 277, 295, 306 |

Following a five-day bench trial in 2014, this Court found that Defendant United States of America ("the United States") had deprived Plaintiff Haiping Su ("Plaintiff") of his state constitutional privacy rights by telling his employer, colleagues, and coworkers that Plaintiff was a security risk because he had taken money from a foreign government. Dkt. No. 266 ("FFCL") at 20-21. The Court awarded Plaintiff $10,000 in damages for his emotional distress. Id. at 22-25. Plaintiff now moves for sanctions under Fed. R. Civ. P. 37(c) for the United States' alleged failure to admit facts that were later proven. Dkt. No. 277. Plaintiff also seeks attorney's fees for the United States' bad faith in litigating this action. Dkt. No. 295. Finally, both Plaintiff and the United States ask the Court to revisit the Clerk's taxation of costs against the United States. Dkt. No. 306. For the reasons below, all three motions are DENIED.

**I.   BACKGROUND**

    **A.   Factual Background**

For the purposes of these motions, the Court only provides a brief summary of the facts as found by the Court. See FFCL at 3-12. Plaintiff is an American citizen who immigrated to the United States from China in 1986. At all relevant times, he worked for the University Affiliated

1

Case No.: 5:09-cv-02838-EJD
ORDER RE: MOTIONS REGARDING FEES AND COSTS

Research Center ("UARC") at the University of California at Santa Cruz. After UARC won a contract from the National Aeronautics and Space Administration ("NASA"), Plaintiff, along with several other UARC employees, worked on site at the NASA Ames Research Center ("NASA Ames"). Plaintiff worked only with publicly available information, and he was not involved in sensitive or classified work.

In March 2006, the FBI sent NASA a memorandum suggesting that Plaintiff posed a threat to national security and asked that NASA participate in a joint investigation of Plaintiff. That investigation continued for over two years. Two FBI agents interviewed Plaintiff four times during 2008. On one of those occasions, Plaintiff underwent a consensual polygraph examination. Plaintiff had already told several of his colleagues that he was under investigation, and he also told two of his superiors at UARC that the polygraph did not go well. On May 22, 2008, the FBI sent NASA a memorandum stating that the results of the polygraph were "indicative of deception" and that the FBI had "a reasonable belief" that Plaintiff "may present a threat to national security." Robert Dolci ("Dolci"), the Chief of Protective Services at NASA Ames, received the memorandum on the same day.

On June 24, 2008, Dolci drafted a letter debarring Plaintiff - that is, revoking Plaintiff's access to NASA Ames - on the basis that Plaintiff posed a security risk. Kenneth Silverman ("Silverman"), the Center Chief of Security at NASA Ames, took the letter to two of Plaintiff's supervisors, discussed the letter's terms with the supervisors, and escorted Plaintiff from the premises. On July 3, 2008, in response to a number of questions from Plaintiff's colleagues about the debarment, Dolci convened a meeting that included Plaintiff's UARC coworkers and NASA colleagues. According to several of the attendees at the meeting, Dolci informed the attendees that Plaintiff had been debarred because he was a security risk. Dolci also told the assembled staff that one way to avoid Plaintiff's fate was not to take money from a foreign government and then deny it. The statement was intended to suggest, and did suggest, that Plaintiff had done exactly that. At trial, Dolci did not recall making these statements, but the Court credited witness testimony indicating that he had.

1   Since the debarment, Plaintiff has continued to work for UARC via a telecommuting
2   agreement.  However, he has suffered mental and emotional distress and has developed a number
3   of symptoms that are partially caused by being labeled a security risk and partially caused by his
4   debarment.  At the time of trial, Plaintiff had not sought medical treatment for his emotional
5   distress or other symptoms.

### B. Procedural History

Plaintiff filed two lawsuits arising from the facts above.  In the first suit, filed on June 24, 2009, Plaintiff asserted claims under the Administrative Procedure Act ("APA") and the Fifth Amendment of the United States Constitution; these claims were based on alleged violations of Plaintiff's due process rights with respect to his debarment.  Dkt. No. 1, ¶¶s 60-86.  Plaintiff also asserted violations of his privacy rights as protected by the federal Privacy Act, 5 U.S.C. § 552a, the United States Constitution, and the California Constitution.  Id., ¶¶s 87-104.  In the second action, filed on January 15, 2010, Plaintiff asserted a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, based upon an alleged violation of his privacy rights as protected by the California Constitution.  Case No. 5:10-cv-00222, ECF No. 1.

The Court dismissed the Fifth Amendment claim and granted summary judgment against Plaintiff with respect to the APA claim.  Dkt Nos. 63, 122.  It then consolidated the two actions. Dkt. No. 124.  Plaintiff filed a consolidated complaint, in which he asserted the three remaining claims: two against Dolci and other NASA officials in their official capacities for violations of the Privacy Act and Plaintiff's federal constitutional rights, and a third claim against the United States under the FTCA based upon its alleged violation of Plaintiff's privacy rights under the California Constitution.  Dkt. No. 127-1.  Afterwards, the Court granted summary judgment against Plaintiff on the first two claims, leaving only Plaintiff's FTCA claim against the United States for violating the California Constitution.  Dkt. No. 216.

The Court held a bench trial on the single remaining claim starting on December 5, 2013. Dkt. No. 246.  On September 25, 2014, the Court issued its findings of fact and conclusions of law.  Dkt. No. 266.  Plaintiff had asserted eight separate deprivations of his privacy rights, but the

3
Case No.: 5:09-cv-02838-EJD
ORDER RE: MOTIONS REGARDING FEES AND COSTS

1    Court found that only one merited relief: Dolci's statement in the July 3 meeting that Plaintiff had
2    taken money from a foreign government and denied it. Id. at 14-22. Before trial, Plaintiff
3    requested damages in the amount of $5,267,648.57. Id. at 22. Finding that Plaintiff could not
4    prove that the bulk of the claimed damages was traceable to the violation of his privacy rights, the
5    Court awarded Plaintiff $10,000. Id. at 22-25.

6    Accordingly, the Court entered judgment in favor of Plaintiff in the amount of $10,000.
7    Dkt. No. 267. Plaintiff also supplied a bill of costs in the amount of $30,478.40. Dkt. No. 291.
8    Finding that only some of the claimed costs were recoverable under Civ. L.R. 54-3, the Clerk
9    taxed costs against the United States in the reduced amount of $21,311.64. Dkt. No. 304. Now
10   before the Court are a trio of motions about attorney's fees and costs. Dkt. Nos. 277, 295, 306.

11   **II.    MOTION FOR SANCTIONS**

12   First, Plaintiff moves for an order requiring the United States to pay sanctions under Fed.
13   R. Civ. P. 37(c). Dkt. No. 277. Plaintiff served a number of requests for admission on the United
14   States and NASA, and both parties refused to admit certain facts and conclusions. Id. at 4-6.
15   Plaintiff now seeks $1,314,545.11 in reasonable expenses, primarily consisting of attorney's fees,
16   that Plaintiff incurred through trial in proving these facts. Id. at 10-12.

17   **A.    Legal Standard**

18   Fed. R. Civ. P. 36(a) allows a party to serve on another party "a written request to admit,
19   for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1)
20   relating to . . . facts, the application of law to fact, or opinions about either." "If a party fails to
21   admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true,
22   the requesting party may move that the party who failed to admit pay the reasonable expenses,
23   including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2). A court must
24   grant such a motion unless the request was objectionable, "the admission sought was of no
25   substantial importance," "the party failing to admit had a reasonable ground to believe that it
26   might prevail on the matter," or "there was other good reason for the failure to admit." Id. "Rule
27   37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly

refusing the admission pay the expenses of the other side in making the necessary proof at trial." Fed. R. Civ. P. 37(c) advisory committee's note to 1970 amendment.

The reasonable expenses recoverable under Rule 37(c)(2) are those "expenses that flowed directly from the improper answers to the [denied] requests." Marchand v. Mercy Med. Ctr., 22 F.3d 933, 939 (9th Cir. 1994). "In determining the magnitude of the expenses that the failure to admit caused the propounding party to suffer, courts must look for a sufficient causal nexus between the expenses claimed, and the failure to admit." 7 Moore's Federal Practice § 37.73 (3d ed. 1997); see Marchand, 22 F.3d at 939 (finding that party seeking sanctions had "establish[ed] sufficient causal nexus between the awarded expenses and [the] failure to admit"). "The expenses that may be assessed are only those that could have been avoided by the admission, and do not include expenses incurred prior to the filing of the answers to the requests for admission." 8B Wright, Miller & Marcus, Federal Practice & Procedure § 2290 (3d ed. 2010) (citing Read-Rite Corp. v. Burlington Air Express, Inc., 183 F.R.D. 545 (N.D. Cal. 1998)).

### B. Discussion

The motion presents two distinct issues: whether the United States properly denied the matters that Plaintiff requested that it admit, and whether the expenses that Plaintiff now seeks are reasonable and connected to the failures to admit. The Court considers each in turn.

#### i. Failures to Admit

Plaintiff has identified six requests for admission relevant to its motion. Broadly speaking, they can be classified into the following categories: (1) a request not served on the United States; (2) requests to admit facts; and (3) requests to admit legal conclusions.

a. Request not served on the United States

The first request that Plaintiff identifies was served on NASA, not the United States, on February 22, 2010. Dkt. No. 279-1; see Dkt. No. 278 at 4. Rule 37(c)(2) allows sanctions only against "the party who failed to admit." The United States is not that party. Regardless of whether NASA is an agency of the United States or whether the parties were represented by the same attorneys, NASA and the United States are distinct legal entities. Plaintiff cannot obtain

5
Case No.: 5:09-cv-02838-EJD
ORDER RE: MOTIONS REGARDING FEES AND COSTS

sanctions from the United States for NASA's allegedly sanctionable behavior. The motion for sanctions with respect to this request will be denied.

### b. Requests to admit facts

In three of the identified requests, Plaintiff's Requests for Admission Nos. 9, 10, and 27, Plaintiff asked the United States to admit facts related to Plaintiff's claims. Dkt. No. 279-3 at 3, 5; see Dkt. No. 278 at 4-6. In the first two requests, Plaintiff requested admissions that NASA employees, including but not limited to Dolci and Silverman, disclosed to employees and staff of the University of California at Santa Cruz and NASA, respectively, that Plaintiff was a security risk. Dkt. No. 279-3 at 3. The United States admitted that Dolci and Silverman had told Plaintiff's supervisors that Plaintiff was a security risk, but denied that there had been any other such disclosures, including the July 3 meeting. Dkt. No. 279-4 at 3-4.[1] In the third request, Plaintiff requested an admission that Dolci had advised University of California at Santa Cruz employees and staff that Plaintiff had trouble answering a question on the polygraph examination. Dkt. No. 279-3 at 5. The United States denied the request, subject to objections. Dkt. No. 279-4 at 13.

At trial, as discussed above, the Court found that Dolci had told a group of Plaintiff's coworkers that Plaintiff had been debarred as a security risk. Plaintiff contends that the United States' failure to admit these facts subjects the United States to sanctions.

The Court finds that the United States "had a reasonable ground to believe that it might prevail on the matter." Fed. R. Civ. P. 37(c)(2)(C). Throughout this case, Dolci denied that he had told anyone other than Plaintiff's supervisors that Plaintiff was a security risk or that Plaintiff had trouble answering a question in a polygraph examination. In the end, the Court concluded otherwise after hearing contradictory testimony from a number of other witnesses. FFCL at 7-12. However, "[t]he issue is not whether [the party failing to admit] prevailed at trial 'but whether [it]

---

[1] To be precise, the United States did not deny the remainder of the first request for admission, but it only admitted the facts discussed above. Dkt. No. 279-4 at 3-4. In effect, this constituted a denial. The United States' argument to the contrary is not persuasive.

6
Case No.: 5:09-cv-02838-EJD
ORDER RE: MOTIONS REGARDING FEES AND COSTS

acted reasonably in believing that it might prevail.'" Wash. State Dep't of Transp. v. Wash. Nat. Gas Co., Pacificorp, 59 F.3d 793, 806 (9th Cir. 2005) (second alteration in original) (quoting Marchand, 22 F.3d at 937). In light of Dolci's consistent testimony, the United States acted reasonably in considering the facts disputed and in refusing to admit them. The motion for sanctions with respect to these requests will be denied.

### c. Requests to admit legal conclusions

In two of the identified requests, Plaintiff's Requests for Admissions Nos. 16 and 17, Plaintiff asked the United States to admit that a statement asserting that Plaintiff had taken money from a foreign government or characterizing him as a security risk "contains personal information of an extremely private nature." Dkt. No. 279-3 at 3; see Dkt. No. 278 at 5-6. Subject to a number of objections, including that the requests called for legal conclusions and that they were hypothetical, the United States denied both requests. Dkt. No. 279-4 at 7-8. After trial, the Court found that Dolci had made both of these statements and that they constituted serious invasions of Plaintiff's privacy rights. FFCL at 17-21. Plaintiff contends that the United States' failure to admit these legal conclusions subjects the United States to sanctions.

The Court finds that the United States had "other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2)(D). Both of these requests implicitly assumed that Dolci or someone else had made such disclosures, and the United States had a reasonable ground to believe that no one had done so. Given the phrasing of the requests for admission, the United States acted reasonably in denying that such entirely hypothetical statements would have contained such personal information.

Moreover, whether the information was of an extremely private nature was "of no substantial importance" to the case. Fed. R. Civ. P. 37(c)(2)(C). An admission is of substantial importance if it is "material to the disposition of the case." SEC v. Happ, 392 F.3d 12, 34 (1st Cir. 2004) (citing WSDOT, 59 F.3d at 806). The elements of a privacy claim under the California Constitution are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." Hill

7

Case No.: 5:09-cv-02838-EJD
ORDER RE: MOTIONS REGARDING FEES AND COSTS

1  v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 39-40 (1994). In deciding Plaintiff's privacy

2  claims, the Court considered whether he had a legally protectable interest in the investigatory

3  determination that he was a security risk. FFCL at 15-21 (citing Hunt v. FBI, 972 F.2d 286, 288

4  (9th Cir. 1992); Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (9th Cir. 1998)). However,

5  whether the information disclosed was of an extremely private nature did not figure into the

6  Court's analysis. Id. The Court therefore finds that these requested admissions were immaterial

7  to the disposition of the case, and that the failure to admit them does not merit a sanction. The

8  motion for sanctions with respect to these requests will also be denied.

### ii. Reasonableness of Expenses

Even if Plaintiff had established that the United States' failure to admit these matters was worthy of sanction, Plaintiff's recovery would be limited to "the reasonable expenses . . . incurred" in proving them. Fed. R. Civ. P. 37(c)(2). As discussed above, the expenses sought must have a sufficient causal nexus to the failures to admit. Furthermore, this district's local rules require a party seeking attorney's fees to "itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." Civ. L.R. 37-4(b)(3).

Here, Plaintiff seeks $1,314,545.11 in fees and costs: essentially the entire amount that Plaintiff and his counsel expended in this litigation. Plaintiff has made no attempt to apportion his expenses between those arising from the failures to admit and those that he would have incurred anyway. In fact, a large portion of the requested expenses arose before the United States had even responded to the requests in question. See Dkt. No. 279-5. The expenses that Plaintiff now seeks are plainly unreasonable. For this additional reason, Plaintiff's motion for sanctions will be denied.

### C. Conclusion

For the reasons above, Plaintiff's motion for sanctions under Fed. R. Civ. P. 37(c)(2) for the United States' failure to admit matters later proven at trial is DENIED.

**III. MOTION FOR ATTORNEY'S FEES**

Next, Plaintiff moves for attorney's fees under the Court's inherent powers. Dkt. No. 296.

**A. Legal Standard**

The Equal Access to Justice Act provides that the United States is subject to such awards of attorney's fees "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). Under the common law, "'in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel,' even though the so-called 'American Rule' prohibits fee shifting in most cases." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 (1975)).

"Before awarding sanctions under its inherent powers, . . . the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" Primus Auto. Fin. Servs. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (quoting Roadway Express, 447 U.S. at 767). "Such a finding is especially critical when the court uses its inherent powers to engage in fee-shifting . . . ." Id. (citing Chambers, 501 U.S. at 47). "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" Id. at 649 (quoting In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996)). Even recklessness alone "is an insufficient basis for sanctions under a court's inherent power." In re Keegan, 78 F.3d at 436; see also Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001).

**B. Discussion**

The record in this case does not support a finding of bad faith. Plaintiff finds bad faith both in Dolci's conduct and in the United States' litigation of the case. Dkt. No. 296 at 2-3. As discussed above, the United States acted reasonably in relying on Dolci's claim that he had not made the statements at issue. Moreover, the United States asserted reasonable defenses to Plaintiff's claims. The Court dismissed a number of Plaintiff's causes of action and granted summary judgment on several more. Even as to the only claim on which the Court found for

Plaintiff, it noted that the defenses that the United States asserted presented "difficult issues" for the Court to resolve. FFCL at 20. Plaintiff has not convincingly demonstrated that the United States' conduct in litigating this case "constituted or was tantamount to bad faith." Primus, 115 F.3d at 648 (quoting Roadway Express, 447 U.S. at 767).

That leaves the conduct by Dolci. The Court has no inherent power to impose sanctions based solely on pre-litigation conduct. See Rodriguez v. United States, 542 F.3d 704, 712 (9th Cir. 2008) (citing Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 976 F.2d 541, 548-51 (9th Cir. 1992)). Even if Dolci acted wrongfully towards Plaintiff in 2008, that conduct is beyond the Court's inherent powers. And as for Dolci's persistence in denying that he had made statements that the Court ultimately found that he had made, it cannot be accepted that every party whose testimony the finder of fact ultimately disbelieves becomes subject to sanctions solely on that basis. On this record and based on these arguments, the Court finds that Plaintiff failed to satisfy his burden to show that Dolci acted in bad faith by maintaining that he never made the statements in question. For these reasons, the motion for an award of attorney's fees under the Court's inherent powers is DENIED.

## IV. MOTION TO RETAX COSTS

Finally, the United States moves under Fed. R. Civ. P. 54(d)(1) to ask the Court to review the Clerk's taxation of costs against the United States in the amount of $21,311.64. Dkt. No. 306. Plaintiff opposes the United States' motion and also moves for the Court to increase the costs taxed to the amount that Plaintiff originally requested. Dkt. No. 307.

The United States raises a number of general objections, none of which the Court finds persuasive. Although Plaintiff amended his bill of costs after he and the United States had met and conferred, the amendment corrected only a single clerical error and actually lowered the total amount of costs. Dkt. Nos. 273, 291. And even if Plaintiff did not succeed on most of his claims and obtained only a small fraction of the monetary relief he sought, the Court declines to exercise its discretion to deny or reduce costs. See Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016, 1022 (9th Cir. 2003).

1   Both parties also raise more specific issues with the Clerk's taxation of costs. After
2 reviewing Plaintiff's amended bill of costs and the Clerk's taxation, the Court is satisfied that the
3 Clerk's taxation comported with 28 U.S.C. § 1920 and Civ. L.R. 54-3. Both parties' requests to
4 modify the costs awarded are DENIED.

6   **IT IS SO ORDERED.**

7 Dated:  September 9, 2016



EDWARD J. DAVILA
United States District Judge